†HENRY STEUVE *v.* GRAND LODGE, A. O. U. W., ET AL.

1. COURTS WILL NOT INTERFERE WITH JUDICATORIES OF AN ORDER UNLESS A RIGHT IS INFRINGED.

A member of a mutual benefit association is subject to the decision of the judicatories of the order, and cannot apply to the courts, unless a property right or contract is infringed.

2. AUTHORITY OF THE SUPREME LODGE OVER LAWS OF THE ORDER.

The supreme lodge of the A. O. U. W. has the power to alter, amend or abrogate the laws of the order, and has exclusive jurisdiction as to all matters pertaining to the welfare of the order.

3. MISTAKE IN APPLICATION— HEAVIER ASSESSMENT THAN AGREED UPON RESULTING FROM DIVISION OF JURISDICTION—SUBSEQUENT PAYMENTS A WAIVER.

A benefit certificate, by the laws of the order, could only be legally issued on application requiring a compliance by the applicant with the rules that are or may be enacted by the order, but by mistake his application was on a blank requiring compliance with the rules of the grand lodge of that particular jurisdiction. The supreme governing body of the order afterwards divided the jurisdiction into two, and thereby imposed a heavier assessment on such member, the mortality being greater in his grand lodge's jurisdiction. Held: He is subject to such change. · It does not violate his contract. Also that payments made by him after the change would waive any right to object.

Appeal from the Court of Common Pleas of Hamilton county.

SMITH, J.

The facts in this case, which we understand are agreed to by the parties, so far as it is necessary in our view to state them, are substantially these:

The Ancient Order of United Workmen is a beneficial and fraternal association (unincorporated), composed of various members throughout the United States and Canada, the members now numbering about 225,000 One of the principal objects of the association is the collection from the members of an amount sufficient to pay on the death of a member in good standing, a sum not exceeding $2,000 to the person or persons designated by such deceased member in his life-time to receive the same. This is known as the "beneficiary fund."

Second—The governing bodies of such association are, 1st, the Supreme Lodge; 2d, the Grand Lodges, and 3d, Subordinate Lodges. The supreme lodge, from its organization, has had and still has "original and exclusive jurisdiction over all subjects and matters pertaining to the general welfare of the society. and appellate jurisdiction from the decisions of grand lodges, and its enactments and decisions upon all such matters are the supreme law of the order " * * * It "may prescribe and determine the rights, privileges and duties of the members of the society, and of the beneficiaries of deceased members, or those claiming to be such, and alter, amend or abrogate the same," * * * make such assessments for revenue upon the grand lodges as may be necessary to defray the expenses of the

---

†An entry of settlement by consent of parties was made in the supreme court, Sept. 27 1892.

supreme lodge, and to promote the general welfare of the order; and generally to do all things which it may deem right and proper for the promotion of the honor, welfare and perpetuity of the order." Grand lodges have such powers and jurisdiction as were conferred by the supreme lodge; and subordinate lodges are those which received members into the order, and as the name implies, are subject to the supreme and grand lodges within whose jurisdiction they are located, and have such powers as the supreme lodge has conferred upon them.

Third—The original plan of the association, so far as the beneficiary fund is concerned, was substantially this: Before the number of members had reached 2,000, on the death of a member, each of the surviving members was assessed $1.00, and the amount thus realized was paid to the beneficiary designated by such deceased member. After the number of members equalled or exceeded 2,000, two thousand dollars of the amount so realized was paid as aforesaid.

Fourth—The association was organized in Pennsylvania, October 27, 1863; and in 1871 the first grand lodge—that of Pennsylvania—was formed, having jurisdiction over the members and subordinate lodges in that state. Under the authority of this grand lodge, subordinate lodges were instituted in Ohio and Kentucky, and a grand lodge organized in each of these states, and on February 11, 1873, by the authority of these three grand lodges, the supreme lodge of the order was established, with the powers and jurisdiction before mentioned.

Fifth—After the organization of the supreme lodge, and by its authority, jurisdictions for the collection, management and disbursement of the beneficiary fund were established as follows: 1st. The Supreme Lodge Beneficiary Jurisdiction, consisting of those subordinate lodges and individual members not under the control of any grand lodge separate beneficiary jurisdiction, and 2d, Grand Lodge separate beneficiary jurisdictions set apart as such by the Supreme Lodge. These had the right to collect and disburse the assessments levied on their own members on the death of one of them, and were severally responsible for the beneficiary claims of such members, and such was the case as to the supreme lodge in its separate Beneficiary Jurisdiction. Until the year 1888, a Grand Lodge separate Beneficiary Jurisdiction could not be formed, or continue unless the number of members therein was 2,000.

Sixth—The grand lodge of Ohio was first set apart as a separate beneficiary jurisdiction by the supreme lodge, March 20, 1875. Its membership having fallen below 2,000 it returned to the supreme lodge beneficiary jurisdiction, August 1, 1878. Having again attained a membership of 2,000, it was once more set apart as a separate beneficiary jurisdiction, September 1, 1883, and it so continued until it was attempted to be divided into two jurisdictions, as hereinafter stated.

Seventh—Prior to the year 1880, the supreme beneficiary jurisdiction, and each of the grand lodge separate beneficiary jurisdictions were respectively required to pay the beneficiary claims on account of their own deceased members. The result of this was that if for a series of years there was a much larger number of deaths of members in one jurisdiction in proportion to its membership than in the others, the members of such jurisdiction would be called on and required to pay annually much more than the members in other jurisdictions, and this often occurred. To correct this inequality to some extent, the supreme lodge in 1880, adopted a plan known as the "Relief Law." It fixed a maximum number of assessments for each beneficial jurisdiction, such maximum not being the same in each jurisdiction, but varying as was deemed just and equitable by the supreme lodge. If the claims of the beneficiaries in any one jurisdiction required an amount in excess of that which would be realized from the collection of such maximum number of assessments, the deficiency was to be made up by the supreme lodge, by general assessment on all the members of the order. This plan was slightly altered from time to time by the supreme lodge, but we understand it to be conceded, that under its operation, the grand Lodge of Ohio separate beneficiary jurisdiction has received a much larger amount to aid in the payment of its beneficial claims, than it has paid towards beneficial claims in other jurisdictions.

Eighth—On December 18, 1874, the plaintiff, Henry Steuve, was a member of the west end subordinate lodge, of this city, and then received a beneficial certificate from his said lodge for 2,000. At the time of the issue to him of this certificate, Steuve, by the regulations of the order, was bound to pay an assessment of $1.00 on the death of each member not in a separate beneficial jurisdiction, and it probably was an assessment of that amount on the death of each member of the whole order. But, as has been found, on March 20, 1875, the grand lodge of Ohio separate beneficial jurisdiction was formed, and the assessment on members in that jurisdiction was $1.00 on the death of each member of such jurisdiction. This continued until the change of August 1, 1878, to the supreme lodge jurisdiction, and that until September 1, 1883, when the Grand Lodge of Ohio separate beneficial jurisdiction was again established and has since continued, and so far as it appears, payments were made by the plaintiff on these different plans without objection.

Ninth—On December 13, 1878, the certificate which had been issued to the plaintiff by his lodge was cancelled, and a new certificate was issued to him December 21, 1878, by the grand lodge of Ohio, countersigned by Damon lodge, of which he was then a member.

This change was made in pursuance of a law promulgated by the supreme lodge, which had prescribed the form of the application on which it should issue. This certificate recites substantially that "in consideration of the representations and declarations made to them in the application for this beneficial certificate, bearing date November 28, 1878, which application is made a part of this contract, and the sum of one dollar, * * * and in consideration of the payment to said Grand Lodge of all assessments made upon this beneficial certificate in accordance with the terms subscribed to, in the aforesaid application, do hereby insure, etc." The application referred to therein contained this stipulation: "I hereby agree, in consideration of the certificate on the beneficial fund of $2,000, to be issued to me by said grand lodge, to pay all beneficiary assessments lawfully charged to me by the said grand lodge within twenty days from the date of notice thereof. * * * I further agree to accept said certificate subject to such laws, rules and regulations as now exist, or may hereafter be adopted by and governing said grand lodge, not inconsistent with those that now exist."

But it clearly appears that in March, 1877, more than a year before the issue of the certificate, the supreme lodge had prescribed a form of application for beneficiary certificate which contained no such language as that above quoted, but required the applicant to agree that compliance on his part, "with all the laws, regulations and requirements which are, or may be enacted by said order, is the express condition upon which I am to have and enjoy all the other privileges of said order." It does not appear why this form of application was used against the orders of the supreme lodge. It was an old form, and it was probably used by mistake, and without the knowledge of the Grand Lodge.

Tenth—In June, 1889, the supreme lodge having found that it was just and equitable to do so, divided the grand lodge of Ohio separate beneficial jurisdiction into two districts, one consisting of the county of Hamilton, and the other of the remainder of the state. It had been ascertained that for three fiscal years before this action there had been among the members of the order in Hamilton county, a mortality twenty-five per cent. greater than that in the other part of the state, and it was provided that in the county of Hamilton district, the maximum rate of assessment should be fifty-five, and in the other district twenty-eight. This took effect July 1, 1889.

The defendants are seeking to make assessments in these two districts on this basis. That is, if it is necessary to do so, an assessment of fifty-five should be made to pay the beneficial claims of members in Hamilton county who may die during the year, while in the other district only twenty-eight can be made. And in either case, if such assessments are not sufficient to pay the claims, the deficiency is to be made up by the order at large. The plaintiff is seeking to enjoin the carrying out of this plan, on the ground that it would be a violation of the principles of the order, and of his special contract with the grand lodge of Ohio. Is he, on the facts stated, entitled to such relief?

A majority of the court is of the opinion that he is not. We understand the law to be, that when a person becomes a member of an association of this kind, he becomes subject to the laws, rules and regulations of such association, and that he cannot properly resort to the courts for relief or redress, unless there has been an invasion by the society of some property right of his, as by the breach of some vested contract made with him, or when some act has been done by the society without any authority, which infringes upon some property right of his. That if by the constitution of such association, or the rules and regulations legally adopted by it, any body or judicatory thereof has the clear right to legislate in regard to the interests of such association, or to administer its affairs according to its judgment or discretion, and to alter or change its rules and regulations, the members of the association are bound thereby.

In this case we think it clear that the action of the supreme lodge complained of was authorized by the constitution of the order. So far as this beneficial fund, and the assessments therefor are concerned, it had the right to make any reasonable regulations, as to it seemed proper, not in violation of a contract made by it (which is not claimed in this case), and the plaintiff having become a member of an association the constitution of which gave such right to the supreme lodge, he is bound by its action.

The only point then as to which we think there can be any question is, whether the plaintiff, on the facts found, has a right to the relief asked as against the grand lodge of Ohio and its grand recorder—that is, to restrain them from

obeying these valid orders of the supreme lodge in carrying into effect the action of that body made in June, 1889, as being a breach of the contract made between him and the order when his beneficial certificate was issued on December 21, 1878, which certificate, and the application which was made part of it, contained language hereinbefore cited.

It must be conceded that these papers make a contract between Steuve and the grand lodge of Ohio, that if he continued to make due payment of all beneficiary assessments lawfully charged to him by said grand lodge, and complied with the other conditions expressed therein, that he would be entitled to have the $2,000 paid to the person designated by him to receive it, when it became payable. Whether the subsequent statement in the application, that "I further agree to accept said certificate subject to such laws, rules and regulations, as now exist, or may hereafter be adopted by and governing said grand lodge, not inconsistent with those that now exist," was intended by the parties to limit these assessments to the exact, or substantially the same rule as was in force at that time, is more doubtful, and if such was the meaning of the stipulation, the further question arises whether it was legal and binding; and if so, whether the plaintiff, by his conduct, waived that provision.

In the first place, we think it questionable whether it has the meaning contended for. It does not occur in the sentence where he agrees to pay all assessments lawfully charged to him by the grand lodge, but in a subsequent paragraph, where it seems that other matters were referred to, and in determining the meaning to be given to this doubtful provision, it is admissible and proper to look at the conduct and acts of the parties in carrying it out, as showing what construction they placed upon it. As has been stated, at the date of the contract the subordinate lodges of Ohio, and the members thereof, were attached to the supreme lodge beneficiary jurisdiction, and were liable to be assessed $1.00 on the death of each member of that jurisdiction. But in 1883, such subordinate lodges and members in the state of Ohio, were again, by the supreme lodge, placed in the grand lodge of Ohio separate beneficial jurisdiction, where the assessments for the death of the members of such jurisdiction were levied on the surviving members thereof, on a wholly different system from that in force at the date of the certificate. Other radical changes were made in the matter of assessments by the supreme lodge, particularly in the "Relief Plan," whereby the membership in Ohio were greatly benefited and relieved from the heavy burden resting upon them. All this was done, so far as appears, without objection from plaintiff, who doubtless had full knowledge of the changes (he having held a high office in the order), and it goes far to show that he did not consider that his contract prevented any change as to him, in the plan of assessment, and if he did so think, he seems to have waived his right to object to it. He has so long enjoyed the benefits of a change in the modes of assessment, that he ought not to complain now, when he thinks another change works against him.

It is clear, too, that the grand lodge had not the right to make such a contract in contravention of the law established by the supreme lodge, and the plaintiff, as a member, was in the same position. Neither had the right in this way to limit the jurisdiction or power of the supreme lodge, or to obtain better terms than those prescribed for the membership at large, or of that particular jurisdiction. If the supreme lodge had the authority to divide a separate jurisdiction, as was done in this case (as we think it had), it also had the right to require the grand lodge to collect the assessments in the mode indicated, and we ought not to interfere to prevent it. If the grand lodge of Ohio has, by a contract attempted to be made with plaintiff, but which it was not authorized to make, made itself liable to him, he being compelled to pay the assessments which the supreme lodge has the right to call for, that would have to be settled in a different

suit. But we incline to the opinion that such is not the case, and the bill of the plaintiff will be dismissed.

Judge Cox dissents from the decision.

M. F. Wilson, for plaintiff.

John W. Warrington and Judge John Frizell, of Nashville, Tenn., for defendants.